In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00050-CR


______________________________




JEFFERY FOWLER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 00F0522-202




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Jeffery Fowler appeals his conviction for felony driving while intoxicated. A jury
found Fowler guilty and assessed punishment at twenty years' confinement. (1) Tex. Pen.
Code Ann. §§ 49.04, 49.09(b) (Vernon Supp. 2002). Fowler contends the trial court erred
by admitting evidence of an extraneous offense at the guilt/innocence phase of his trial. 
He contends the admission of this extraneous offense prevented the jury from considering
the full range of punishment during the punishment phase of his trial.

 On May 28, 2000, Fowler drove his vehicle over the yellow center lines on FM 922,
forcing an oncoming pickup truck, driven by New Boston Chief of Police Kerry Pinkham,
off the road. Pinkham turned around and followed Fowler while calling for police
assistance regarding a suspected drunk driver. Pinkham followed Fowler until Fowler
stopped on the side of the road. Fowler then exited the vehicle with a beer in his hand. 
His female passenger also exited the vehicle. Thinking they were switching drivers,
Pinkham identified himself and requested Fowler to wait on the side of the road until a
patrol unit arrived, which he did. After the patrol unit arrived, Fowler was arrested for
driving while intoxicated. A breath test revealed Fowler's breath alcohol concentration was
0.21. (2)

 The standard of review of a trial court's decision to admit or exclude evidence is
abuse of discretion. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App.), cert.
denied, ___ U.S. ___, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001). We review the trial court's
ruling admitting the extraneous offense evidence under an abuse of discretion standard,
meaning we will uphold the trial court's decision if it is within "the zone of reasonable
disagreement." Id.

 The evidence of an extraneous offense, admitted at the guilt/innocence phase of
trial, came during the testimony of Shey Gray, a witness for the State. Gray testified on
redirect examination that, "He [Fowler] pulled a gun on me." Fowler immediately objected
to the evidence and requested it be stricken from the record as an extraneous offense
which may not be entered during the guilt/innocence phase of the trial under Texas Rule
of Evidence 404(b). (3) 

 Fowler is correct; this evidence is not properly admissible under Rule 404(b). 
However, the trial court did not err in admitting the evidence. A review of the record
surrounding the admission of the testimony shows the trial court properly admitted the
usually inadmissible testimony because Fowler opened the door to the testimony. 

 At trial, the State called Gray, the female passenger in Fowler's car on the night of
the incident, as a witness. On cross-examination, Fowler's counsel asked Gray:

 Q. And you've recently broken up with Mr. Fowler?


 A. Yes, sir.


 Q. And you're not on good terms with Mr. Fowler?


 A. I was up until two days ago, yes, sir.


 Q. And so you really don't want to see Mr. Fowler any more?


 A. No, sir, not after everything he's done.


Immediately on redirect, the prosecutor asked:


 Q. Let me follow up on a question that defense counsel just asked
you. You said you were on good terms with him up until two days ago. What
happened two days ago?


 A. He pulled a gun on me.


Defense counsel objected:


 [DEFENSE COUNSEL]: Your Honor, I would object to that
and ask that it be stricken from the record. That's obviously an extraneous
offense that they're trying to get in during the guilt/innocence phase.


 THE COURT: I think it's fairly responsive to the question
that was asked by defendant, so I'm going to overrule your objection.


 When a defendant "opens the door" on an issue by attempting to present an
incomplete picture of an incident, the state is permitted to complete the picture with
evidence that would have otherwise been inadmissible. Lucas v. State, 791 S.W.2d 35,
53-54 (Tex. Crim. App. 1989); Skillern v. State, 890 S.W.2d 849, 864 (Tex. App.-Austin
1994, pet. ref'd). In this case, Fowler opened the door by asking Gray, "And you're not on
good terms with Mr. Fowler," followed by, "And so you really don't want to see Mr. Fowler
any more?"

 We find it is within the zone of reasonable disagreement whether Fowler opened the
door to this testimony and therefore find the trial court did not abuse its discretion in
admitting the extraneous offense evidence.

 Even if Fowler did not open the door to the introduction of this evidence, any error
was harmless. A violation of the evidentiary rules that results in the erroneous admission
of evidence is a nonconstitutional error governed by Texas Rule of Appellate Procedure
44.2(b). (4) Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Rule 44.2(b) requires we disregard an error
if it does not affect the appellant's substantial rights. 

 In this case, Fowler does not complain the introduction of this evidence harmed him
during the guilt/innocence phase of his trial, but rather argues it so tainted the jury that it
was unable to consider the full range of punishment, which is shown by his receiving
twenty years' confinement. He contends the harm occurred during the punishment phase
of the trial. Evidence of extraneous bad acts may be admissible during the punishment
phase, so this evidence could have properly been admitted by the State during the
punishment phase. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 2002). 
Because the State could have properly admitted the evidence during the punishment
phase and Fowler contends the harm occurred during the punishment phase, we find
Fowler has not shown he suffered egregious harm. Even if the trial court erred, it was
harmless error.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: January 7, 2002

Date Decided: February 7, 2002


Do Not Publish

1. Fowler was subject to enhancement of his punishment based on one prior felony
conviction for escape. 
2. The indictment charged that Fowler operated a motor vehicle in a public place while
he was intoxicated by not having the normal use of his mental and physical faculties by
reason of the introduction of alcohol into his body and by having an alcohol concentration
of at least 0.08. 
3. Evidence of other crimes, wrongs, or acts is inadmissible for the purpose of proving
action in conformity therewith. It may, however, be admissible for other purposes, such 
as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident, provided that on timely request by the accused in a criminal case,
reasonable notice is given in advance of trial of intent to introduce in the state's case-in-chief such evidence other than that arising in the same transaction. Tex. R. Evid. 404(b). 
4. Tex. R. App. P. 44.2(b).


en="false"
 UnhideWhenUsed="false" Name="Medium List 1 Accent 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00053-CR

                                                ______________________________

 

 

                                 TED PATRICK CAMMACK,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 115th
Judicial District Court

                                                            Upshur County, Texas

                                                            Trial
Court No. 15,013

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Ted Patrick
Cammack was convicted by a jury of possessing methamphetamine with intent to
deliver in an amount of four grams or more but less than 200 grams.  Cammack appeals this conviction and sentence
of thirty years imprisonment, arguing that the trial court erred in failing to
suppress the evidence obtained from an allegedly illegal traffic stop and that
the evidence is legally insufficient to support his conviction.  Because (1) the trial court could have
believed the officers testimony over Cammacks and (2) sufficient evidence supported
Cammacks conviction, we affirm the trial courts judgment.

(1)        The Trial Court Could Have Believed the
Officers Testimony over Cammacks

 

            We review a
trial courts decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Graves v. State, 307 S.W.3d 483, 489 (Tex.
App.Texarkana 2010, pet. refd); Rogers
v. State, 291 S.W.3d 148, 151 (Tex. App.Texarkana 2009, pet. refd). While
we defer to the trial court on its determination of historical facts and
credibility, we review de novo its application of the law and determination on
questions not turning on credibility. Carmouche
v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996); Graves, 307
S.W.3d at 489.  We also afford deference
to a trial courts application of law to fact questions, also known as mixed
questions of law and fact, if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Guzman, 955 S.W.2d at 89.  Since all the evidence is viewed in the light
most favorable to the trial courts ruling, we are obligated to uphold the
denial of Cammacks motion to suppress if it was supported by the record and
was correct under any theory of law applicable to the case.  Carmouche,
10 S.W.3d at 32728; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Cammacks motion to suppress challenged only the legality of the traffic
stop. 

            An officer
conducts a lawful stop when he or she has reasonable suspicion to believe that
an individual is violating the law.  Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005). Reasonable suspicion exists if the officer has specific,
articulable facts that, when combined with rational inferences from those
facts, would lead to the reasonable conclusion that a particular person
actually is, has been, or soon will be engaged in criminal activity.  Id.;
Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001).  This is an
objective standard that disregards any subjective intent of the officer making
the stop and looks solely to whether an objective basis for the stop exists.  Ford,
158 S.W.3d at 492.  If an officer has a
reasonable basis for suspecting that a person has committed a traffic offense,
the officer may legally initiate a traffic stop.  Graves,
307 S.W.3d at 489; Zervos v. State,
15 S.W.3d 146, 151 (Tex. App.Texarkana 2000, pet. refd); see Tex. Code Crim. Proc.
Ann. art. 14.01(b) (West 2005).

            The Texas
Transportation Code provides [a]n operator shall use the signal authorized by
Section 545.106 to indicate an intention to turn, change lanes, or start from a
parked position. Tex. Transp. Code Ann.
§ 545.104(a) (West 2011).  The signal
shall be used continuously for not less than the last 100 feet of movement of
the vehicle before the turn.  Tex. Transp. Code Ann. § 545.104(b)
(West 2011).

            At the
suppression hearing, Deputy David Thompson testified that he was traveling
northbound on State Highway 271 at the intersection of Red Hen Road in the
afternoon when he passed Cammacks vehicle as it was approaching the
intersection.  Even though the vehicle
was approximately 75 feet from the intersection, Cammack failed to signal
before the turn.  Thompson testified, [W]henever
I passed himpassed the Red Hen Road I watched the vehicle through my mirrors
and when Mr. Cammack turned left on to 271 I noticed that he did not even turn
on his blinker at all.  Thats when I
made a U-turn and went back.  

            Cammack
argues that it would be improbable for Thompson, who was driving approximately
fifty-five miles per hour, to have had sufficient time to observe whether
Cammack used his turn signal.  Thompson
admitted that he would only have one second within which to make the
observation while passing Red Hen Road.[1]  Thompson reiterated, however, that, as he
passed the intersection, he was able to observe that [t]he blinker was not
on.  In opposition, Cammack offered his
own testimony swearing that he properly employed a turn signal.  

            As the
finder of fact, the trial court was free to disregard Cammacks testimony as
self-serving in favor of Thompsons testimony that he observed a failure to
employ a turn signal in violation of Section 545.104 of the Texas
Transportation Code.  Favoring Thompsons
testimony, the trial court could have concluded that Thompson had a reasonable
basis for suspecting that Cammack committed a traffic offense.  Therefore, the court could have properly
found that the traffic stop was legal.  See Zervos, 15 S.W.3d at 151.

            We overrule
this point of error.

 

(2)        Sufficient Evidence Supported Cammacks
Conviction 

 

            In
evaluating legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the jurys verdict to determine whether any rational
jury could have found the essential elements of possession of four or more but
less than 200 grams of methamphetamine with intent to deliver beyond a
reasonable doubt.[2]
 Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319
(1979)); Hartsfield v. State, 305
S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd) (citing Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007)).  We are to rigorously
review legal sufficiency focusing on the quality of the evidence
presented.  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Cammack was in possession of methamphetamine
with intent to deliver as charged in the indictment if he:   (1) knowingly (2) possessed, (3) with intent
to deliver, (4) four grams or more but less than 200 grams (5) of
methamphetamine.  Tex. Health & Safety Code Ann. § 481.112(a), (d) (West
2010).  To prove unlawful possession of
a controlled substance, the State must prove that:   (1) the accused exercised control,
management, or care over the substance; and (2) the accused knew the matter
possessed was contraband.[3]  Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); Tex. Health & Safety Code Ann. §
481.115(a), (d) (West 2010).  Cammack
challenges only the element of knowing possession.

            Mere
presence at a location where drugs are found is insufficient, by itself, to
establish actual care, custody, or control of those drugs.  Evans v.
State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).  When the accused is not in exclusive
possession of the place where the substance is found, it cannot be concluded
that the accused had knowledge of and control over the contraband unless there
are additional independent facts and circumstances which affirmatively link the
accused to the contraband.  Poindexter, 153 S.W.3d at 406 (quoting Deshong v. State, 625 S.W.2d 327, 329
(Tex. Crim. App. 1981)); Jones v. State,
963 S.W.2d 826, 830 (Tex. App.Texarkana 1998, pet. refd).  The links rule is designed to protect the
innocent bystander from conviction based solely upon his fortuitous proximity
to someone elses drugs.  Poindexter, 153 S.W.3d at 406.

            A
nonexclusive list of factors that can be sufficient, either singly or in
combination, to establish Cammacks possession of contraband include:   (1) Cammacks presence when a search is
conducted, (2) whether the contraband was in plain view, (3) Cammacks
proximity to and the accessibility of the narcotics, (4) whether he was under
the influence of narcotics when arrested, (5) whether he possessed other
contraband or narcotics when arrested, (6) whether he made incriminating
statements when arrested, (7) whether he attempted to flee, (8) whether he made
furtive gestures, (9) whether there was an odor of contraband, (10) whether
other contraband or drug paraphernalia were present, (11) whether Cammack owned
or had the right to possess the place where the drugs were found, (12) whether
the place where the drugs were found was enclosed, (13) whether Cammack was
found with a large amount of cash, (14) whether his conduct indicated a
consciousness of guilt, (15) whether he made incriminating statements
connecting himself to the contraband, (16) the quantity of the contraband, and
(17) whether Cammack was observed in a suspicious area under suspicious
circumstances.  Evans, 202 S.W.3d at 162 n.12; Hargrove
v. State, 211 S.W.3d 379, 38586 (Tex. App.San Antonio 2006, pet. refd); Muckleroy v. State, 206 S.W.3d 746, 748
n.4 (Tex. App.Texarkana 2006, pet. refd); Olivarez
v. State, 171 S.W.3d 283, 291 (Tex. App.Houston [1st Dist.] 2005, no
pet.); Kyte v. State, 944 S.W.2d 29,
31 (Tex. App.Texarkana 1997, no pet.); see
Jones, 963 S.W.2d at 830.  The number of links is not dispositive;
rather, we look to the logical force of all of the evidence, direct and
circumstantial.  Evans, 202 S.W.3d at 162.

            At
trial, Thompson identified Red Hen Road as a hot bed for drug activity in the
county, suggesting that Cammack was found in a suspicious area.  Thompson testified that Cammack was the only
person in the vehicle and described Cammacks demeanor as nervous.  Before giving consent to search the vehicle,[4]
Cammack advised me that he didnt want me to search his vehicle due to that he
might have had a friend earlier that was a diabetic might have left a
needle.  On obtaining consent, Thompson
located a needle concealed inside of a magnet mounted on to the center console
by the drivers feet.  The center
console contained digital scales dusted with white crystal residue, another
needle, and a plastic baggy that was filled with methamphetamine with a
street value of $800.00.  Although
Thompson testified he had to obtain a screwdriver to open the side of that
console, the fact-finder could have determined that Cammack was in close
proximity and had access to the drugs.  Thompson
believed that Cammacks knowledge of the concealed needles demonstrated that he
knew methamphetamine was also present in the console.  Thus, factors 1, 3, 10, 11, 12, 14, 15, 16,
and 17 of the links test were met.

            To rebut
these factors, Cammack points to factors 2, 4, 5, 6, 7, 8, 9, and 13.  Specifically, the contraband was not in plain
view; he was not under the influence of drugs when arrested; did not possess
other narcotics; did not make incriminating statements, furtive gestures, or
attempt to flee; there was no odor of contraband; and he did not have a large
sum of money.  

            It was
within the purview of the jury to weigh credibility and conflicts in the
evidence referenced above.  Viewing the
evidence and outcome of the links analysis in the light most favorable to the
verdict, we hold that the jury could, beyond a reasonable doubt, rationally
find Cammacks knowing possession of the methamphetamine.  Therefore, the evidence was legally
sufficient.

            We overrule
this point of error.

 

            We affirm the trial courts
judgment. 

 

            

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          November
14, 2011

Date Decided:             December
14, 2011

 

Do Not Publish

 

 

 











[1]Thompson
also agreed that he could not have seen the blinkers on the drivers side of [Cammacks]
vehicle if he was turning left and that he wouldnt know if the blinkers were
engaged when he was at the stop sign. 
Thompson later stated that, whenever I approached the intersection and
Mr. Cammack was coming up I slowed down at that time.  So whenever he come across and turned left
thats when I noticed on the back of his vehicle that the turn signal was not
working. 





[2]Cammack
does not challenge that the amount of methamphetamine was four or more but less
than 200 grams.

 





[3]Possession
is defined as actual care, custody, control, or management.  Tex.
Penal Code Ann. § 1.07(a)(39) (West Supp. 2011).





[4]Cammack
was driving a borrowed vehicle, which indicated he had a right to temporarily
possess the vehicle where the cocaine was found.  See Menchaca
v. State, 901 S.W.2d 640, 652 (Tex. App.El Paso 1995, pet. refd) (holding
appellants control over borrowed vehicle raised inference he knew of drugs in
vehicle).